Sandra Lee GARRETT, Appellant,

v.

John C. GARRETT, Appellee.

No. 52647.

Court of Appeals of Oklahoma,
Division No. 2.

Feb. 10, 1981.

Rehearing Denied Feb. 23, 1981.

Certiorari Denied March 23, 1981.

Released for Publication by Order of
Court of Appeals March 26, 1981.

Kenneth W. Lackey, Lackey & Wendel, Eufaula, for appellant.

Bruce Green, Muskogee, for appellee.

BRIGHTMIRE, Judge.

The parties were married in 1961 and have one child—a boy, born in 1963. The woman filed this divorce action January 21, 1977, and following a hearing the bonds of matrimony were dissolved February 16, 1978—just six days after an unfortunate altercation that furnished grist for a lot of humiliating evidentiary grain ground up at trial.[1] The specially assigned judge granted the woman a divorce on the ground of gross neglect of duty, gave her custody of the boy, ordered the man to pay $200 a month child support and his necessary medical, optical and orthodontic expenses, and granted the woman a back child support judgment in the amount of $2,346, the home of the parties, their furniture, fixtures and other household goods, as well as a 1974 Torino car and the responsibility for paying off the indebtedness on the car and a $5,000 promissory note to her parents. To the man the court awarded a 1975 Mercury, his law office furniture and equipment, some guns, the responsibility for paying off a $7,500 note owing the woman's mother, an equitacious $1,500 credit against the woman's property, and ordered the man to pay the woman's attorney's fee to the extent of $750.

## I

The woman's first contention is that the trial court erred in refusing to find defendant in contempt of court for failure to make some child support payments and pay other sums specified in a pretrial temporary order.

 The judge was not obliged, under the recorded evidence, to find the man had wilfully violated the temporary order, even though he found some payments had not been made. A hearing on the citation was delayed until the trial by which time the matter had become moot. The woman received a judgment for the arrearage and, at that time, this was all the relief to which she was entitled with regard to the temporary order.[2]

## II

Her next complaint is that it was error for the court to terminate the man's obligation to pay child support upon the child reaching his eighteenth birthday.

 This was no error. A recent statute does provide that a child who has reached 18 years of age and is "regularly and continuously attending high school . . . shall be entitled to support *by the parents*"[3] through his eighteenth birthday. Aside from posing grave constitutional questions concerning legislative authority to require parents to support their adult children, the statute imposes the obligation on both parents, enforceable, if at all, by the affected offspring. It does not authorize a court to order either parent to pay child support money to the other.

## III

The third fault found with the decree is that the court should have made the man pay the woman's attorney more fee.

 This is without merit. The trial judge did not set the woman's attorney's fee. All he did was order the man to pay "a part of her attorney's fee," more particularly, $750. This was within the trial

---

1. Most of the embarrassing evidence was unnecessary to the obtaining of the divorce and could have served no purpose save to create judicial prejudice against the man, an objective that was not achieved.

2. The contempt power of the court for the alleged indirect contempt is available to aid in enforcing compliance, not in punishing disobedience.

3. 12 O.S.1979 § 1277 (emphasis ours)

judge's discretion. And we cannot say he exercised it unwisely.

## IV

The woman's fourth complaint is that the child support set by the court is inadequate. The argument is that the teenage boy is involved in various high school activities including competitive tennis and "should be able to live in a style" and at a "standard ... comparable to the status ..." of his father, a "[m]unicipal [j]udge and a practicing attorney."

 Apart from the meaningless vagueness of such dissimilar terms as "style," "standard" and "status,"[4] we are unaware of a legal foundation upon which one could rest the adoption of such criteria in setting the amount of child support the non-custodial parent should pay to the other. A more meaningful criterion is that which looks to the reasonable needs of the child. It is not possible to conclude the trial court did not invoke that very guideline.

Moreover, no law of which we are aware exempts the woman from contributing to the support of the child. Actually the law imposes the duty to support a child on the parent entitled to his custody.[5] Here the evidence is that the woman, a school teacher, has an annual income equal to or exceeding that of the man. We have no reason to believe the trial judge did not take all these factors into consideration in establishing what the man is to pay. The child support order is reasonable.

## V

Next the woman condemns the court's failure to award her alimony. Her short argument is not leveled at need for support, but at the potential of assuaging the distressing prospects of her having to "face the world as a 'divorcee'" by requiring the man to compensationally atone for his long record of infidelities.

The persuasive edge of the plea, however, is dulled by what seems to be a punitive thrust wrought by emotional stress. As we noted earlier, the woman has an income equal to or in excess of that realized by the man and since she was awarded the house and all the household effects, we can assume her need for collateral support is less than that of the man.

## VI

Finally, the woman says the division of property was "contrary to the law and the evidence." The gist of this complaint is that the trial court "awarded the appellee his earning capacity" and required the woman to pay off a $5,000 debt incurred to help the man through law school.

To begin with, the court could not, and in fact did not, "award" the man his earning capacity any more than he could have awarded the woman hers. It is significant that the woman does not one time use the word equitable in her short argument and we think we know why—she received 70 percent of a $22,600 net marital estate. The $5,000 debt she complains of was the lesser of two notes owing the woman's parents and the responsibility for paying it off was placed on the woman as a means of achieving an equitable distribution of the "net" estate. More than offsetting the $5,000 note was the $7,500 note held by the woman's parents and this one the court required the man to pay.

It appears the trial judge went out of his way to treat both parties justly. We think he did so.

Affirmed.

BACON, P. J., concurs.

BOYDSTON, J., not participating.

---

4. The record really leaves us in the dark as to the man's standard or style of living and we think it fairly well beyond the capacity of the court to attempt to alter the child's status from that of a high school student to one comparable to that of a judge or lawyer.

5. 10 O.S.1971 § 4.